## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 19-bk-13287 |
| | ) | Chapter 7 |
| JAMES COSMANO, | ) | |
| | ) | Judge A. Benjamin Goldgar |
| Debtor. | ) | |
| JAMES COSMANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 21-ap-00059 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS
## AND STATEMENT OF ADDITIONAL FACTS

Pursuant to Local Rule 7056-2, the United States responds to the *Amended Statement of Facts Pursuant to Rule 56.1* of the plaintiff James Cosmano, ECF No. 32, and submits its statement of additional facts, as follows:

## UNITED STATES' RESPONSE TO PLAINTIFF'S
## AMENDED STATEMENT OF FACTS

1.     Admits the filing of the bankruptcy petition.

2.     Admits the court may take judicial notice of its docket and the filings therein but notes this does not admit the truth of the matters asserted within the documents filed.

3.     Admits that if the court has jurisdiction, it is under 28 U.S.C. §§ 157 and 1334 (noting that an admission of jurisdiction is never binding).[1]

---

[1] The United States contends that the Court does not possess jurisdiction to declare the taxes discharged merely on the basis of the government's having not treated 11 U.S.C. § 523(a)(1)(C) as an affirmative defense to the complaint supported by particularized factual allegations.  In addition, the United States contends that the only "ripe" Article III controversy surrounds

(continued...)

4.      Admits that if there is jurisdiction, this is a core proceeding.

5.      Admits that venue is proper.

6.      Admits the IRS was a scheduled creditor.

7.      Admits the United States received notice of the bankruptcy.

8.      Admits that as of the date of Mr. Cosmano's Chapter 7 bankruptcy petition

commencing the above-captioned bankruptcy case, Mr. Cosmano owed the United States

$6,468,401.56 in federal income taxes, penalties, and interest, with respect to his 2007

through 2010 income tax years.

9.      Admits that Mr. Cosmano filed a *Notice of Motion to Avoid Lien* in the above-

captioned bankruptcy case at ECF No. 11 on June 12, 2019, and that the United States

subsequently filed a *Notice of Motion to Lift the Automatic Stay* in that case at ECF No. 15 on

July 11, 2019; admits that the foregoing filings reflect a legal dispute between Mr. Cosmano

and the United States; denies that lien avoidance properly raises the issue of dischargeability.

10.     Admits that the filings in the above-captioned bankruptcy case referenced

above in paragraph 9 culminated in additional motion practice in that case, including Mr.

Cosmano's filing of (1) a *Notice of Motion to Avoid Judicial Lien on 2202 Lawrence Lane,

Mount Prospect, Illinois* at ECF No. 55 on March 1, 2021; a *Notice of Motion to Avoid*

---

whether Mr. Cosmano willfully attempted to defeat *collection* of the taxes and that any issue
regarding possible fraud on the return is beyond this Court's jurisdiction because it is not ripe.
*See Hinton v. United States*, Case No. 09 C 6920, 2011 WL 1838724 (N.D. Ill. May 12, 2011)
(reversing this Court's refusal to dismiss for lack of Art. III jurisdiction).  Imagine if tomorrow
the IRS discovered a huge amount of concealed unreported income on year 2009, for example,
warranting assessment of a large amount of additional tax.  The limitations period on additional
assessments of tax is forever open if there is fraud on a return, 26 U.S.C. § 6501, and it would be
wholly inappropriate for this Court to issue a declaratory judgment on that issue – thereby
forever barring additional assessments based on fraud – when the IRS is not presently alleging
any such fraud on a return.

*Judicial Lien on 450 E. Waterside Drive, Unit 1301, Chicago, Illinois* at ECF No. 56 on

March 1, 2021; (3) a *Notice of Motion to Reinstate Automatic Stay* at ECF No. 63 on March 2,

2021; and (4) a *Notice of Motion Seeking Declaration that Federal Tax Debt Were*

*Dischargeable* at ECF No. 64 on March 2, 2021.  Denies that any of Mr. Cosmano's pleadings

prior to this adversary proceeding properly raised the issue of dischargeability.

11.    Admits the United States filed the referenced suit seeking judgment on August

7, 2017.

12.    Admits the United States' 2017 complaint described above in paragraph 12 did

not assert fraud on any tax return (and notes that such an allegation would have been

irrelevant since no fraud penalty was asserted by the IRS).  Admits the 2017 complaint also

did not assert a willful attempt to defeat collection of the taxes which, at that time, would not

have been a ripe issue as no bankruptcy discharge had been entered.

13.    Admits that the United States filed a *Notice of Objections by Creditor United*

*States* in the above-captioned bankruptcy case at ECF No. 71 on March 4, 2021, and that in

that filing, the United States submitted (1) that Rule 7001(6) of the Federal Rules of

Bankruptcy Procedure required that Mr. Cosmano bring any action he might wish to assert for

a dischargeability determination as an adversary proceeding; and (2) that Mr. Cosmano's

federal tax liabilities for his 2007 through 2010 income tax years were excepted from

discharge under 11 U.S.C. § 523(a)(1)(C) because Mr. Cosmano either made a fraudulent tax

return or willfully attempted to evade or defeat payment of taxes.

14.    Denies that the statements of the United States described above in paragraph 13

were made in the absence of "knowledge of the facts" concerning the application of 11 U.S.C.

§ 523(a)(1)(C) to Mr. Cosmano's 2007 through 2010 income tax liabilities.  The United States

had sufficient cause to demand an adversary complaint in order to properly place

dischargeability in issue, and particularly where it would have been inappropriate for the

Department of Justice to bind the IRS without any referral on the issue of dischargeability.

Counsel for the United States had reason enough to suspect the possibility of fraud on the

return at that time in light of the magnitude of the IRS assessment based on unreported

income for the 2007 year even though the United States has since determined not to assert

fraud on the return and to rely only on a willful attempt to defeat *collection* of the tax under

§ 523(a)(1)(C).[2]  The United States similarly had sufficient cause to assert the possibility of

collection evasion and to insist upon its right to take discovery on that issue without having to

concede it before discovery let alone before an adversary complaint properly raised the issue.

The United States also denies that its answer in this adversary proceeding regarding

paragraphs 10, 11, 12, and 12(d) of Mr. Cosmano's adversary complaint admitted such lack of

knowledge, on the ground that the United States' responses to those paragraphs that it lacked

information or knowledge sufficient to form a belief about the truth of the allegations therein, as

permitted by Rule 8(b)(5) of the Federal Rules of Civil Procedure, were not admissions that the

United States lacked *any* knowledge to support the statements it made in its *Notice of Objections*

*by Creditor United States* filed in the above-captioned bankruptcy case.

15.    Admits this adversary proceeding was commenced on April 13, 2021.

16.    Admits that in its answer to Mr. Cosmano's adversary complaint, the United

States admitted the allegations set forth at paragraphs 1 through 4, 6, 8, and 12(a), 12(b), and

---

[2] *See* footnote 1, *ante.*  The United States maintains that the Court lacks jurisdiction to declare
whether there was fraud on the return or not as the United States has determined not to assert that
basis for the discharge exception and adjudicating it would therefore be an advisory opinion
prohibited by Article III of the Constitution.

12(c) of the complaint (which it now qualifies as to jurisdiction as set forth hereinabove); denies that the United States "mostly admitted" to the allegations set forth in paragraphs 5, 7, 9, and 10, on the ground that each of the United States' responses to those paragraphs specifies the extent to which the United States admitted or denied the allegations therein.

17.     Denies that the United States "did not answer" the allegations set forth in paragraphs 10, 11, 12, and 12(d) of Mr. Cosmano's adversary complaint in its answer, on the ground that the United States responded to the allegations in those paragraphs by submitting that it lacked information or knowledge sufficient to form a belief about the truth of those allegations, and that such responses had the effect of a denial under Rule 8(b)(5) of the Federal Rules of Civil Procedure.

18.     Admits that in its answer to Mr. Cosmano's adversary complaint, the United States admitted that 11 U.S.C. § 523(a)(1)(A) and (a)(1)(B) do not apply to Mr. Cosmano's federal income tax liabilities for his 2007 through 2010 tax years.

19.     Admits that the United States averred in its answer to Mr. Cosmano's adversary complaint pursuant to Rule 8(b)(5) of the Federal Rules of Civil Procedure that it lacks information or knowledge sufficient to form a belief about the truth of the complaint's allegations that 11 U.S.C. § 523(a)(1)(C) does not apply to his 2007 through 2010 income tax liabilities.   Further avers that the answer explicitly requested (in its "wherefore" paragraph) "that the Court determine whether Plaintiff's federal income taxes and interest thereon for his 2007, 2008, 2009, 2010 tax years were discharged[.]"

20.     Admits there was a deadline to amend pleadings by November 1, 2021.

21.     Admits the United States has not moved to amend its answer.

22.     Admits the United States has not raised an affirmative defense related to dischargeability (and denies there is any such requirement to preserve its right to dispute the complaint's assertion that § 523(a)(1)(C) does not apply).

23.     Admits that the answer does not plead with particularity fraud on a return (which the United States is not herein asserting) or a willful attempt to defeat tax collection (which does not require particularized pleading).

24.     Admits that Mr. Cosmano propounded interrogatories.

25.     Admits that paragraph 25 correctly quotes the United States' response to interrogatory number 7.

26.     Admits that paragraph 26 correctly quotes the United States' response to interrogatory number 8.

27 (correcting typographical error).[3]  Denies that the United States' responses to Mr. Cosmano's requests for the production of documents were unresponsive, on the ground that, in addition to the "IRS[-]made charts" and "opinion letters" referenced in paragraph 27 of Mr. Cosmano's statement of facts, the United States produced hundreds of pages of material from the IRS's administrative file requested by Mr. Cosmano, including his federal income tax account transcripts for his 2000 through 2020 tax years; tax return transcripts for his 2010 and 2012 through 2018 tax years; Information Returns Processing (IRP) transcripts for his 2010 through 2020 tax years; and materials from the IRS's examination of Mr. Cosmano's 2007 through 2009 tax years such as IRS examination workpapers and the activity log of the IRS Revenue Agent

---

[3] The twenty-seventh paragraph in Mr. Cosmano's statement of facts is incorrectly styled as paragraph 26.  The United States accordingly treats the assertion of fact therein as paragraph 27 for purposes of responding to it, and also for purposes of sequencing the numbered paragraphs set forth in the United States' statement of additional facts, *infra*.

involved in the examinations.  *See* **Ex. A**, *Declaration of Trial Attorney Noah D. Glover-Ettrich*, at ¶¶ 2-4.[4]

## UNITED STATES' STATEMENT OF ADDITIONAL FACTS

The United States sets forth the following additional facts that it maintains are material to whether Mr. Cosmano is entitled to summary judgment (and/or to whether this Court should grant summary judgment against the non-movant as contemplated by Fed. R. Civ. P. 56(f)(1)).[5]

28.     The IRS made assessments of federal income tax for Mr. Cosmano's 2007 tax year on August 25, 2008 and March 15, 2010; for his 2008 tax year on December 1, 2014; for his 2009 tax year on December 1, 2014; and for his 2010 tax year on November 14, 2011 and January 5, 2015.  **Ex. B**, *Declaration of Lucas Jones*, at ¶ 3.  *See also* **Ex. C**, *Notice of Federal Tax Lien Filing and Re-Filing Recorded with the Cook County Recorder of Deeds* (also available from the Cook County Recorder of Deeds website).

29.     Mr. Cosmano's unpaid liabilities for his 2007 through 2010 tax years were secured by liens in favor of the United States, notice of which was recorded with the Cook

---

[4] Because certain of the United States' exhibits to this response to Mr. Cosmano's statement of facts and statement of additional facts include declarations filed in cases in the District Court which may have previously been marked in those cases, *see* footnote 5, *infra*, the United States has marked its exhibits for this filing with a blue "Defendant's Exhibit" sticker to differentiate them from those prior-marked exhibits.

[5] The facts set forth in the United States' statement of additional facts reference proceedings in the United States District Court for the Northern District of Illinois that involve the parties to this case and that concern prepetition federal tax liens being enforced to collect Mr. Cosmano's 2007 through 2010 tax liabilities.  The Court may – and should – take judicial notice of those district court proceedings.  *See Green v. Warden*, 699 F.2d 364, 369 (7th Cir. 1983) ("federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue"); *accord Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F.Supp.3d 829, 843-44 (N.D. Ill. 2020); *In re Goldzweig*, 54 B.R. 229, 234 (Bankr. N.D. Ill. 1985).  Certain facts in the statement of additional facts are also drawn from declarations made from personal knowledge that were filed in those matters, and such declarations are attached as exhibits hereto.

County Recorder of Deeds on February 9, 2015, and such liens encumber his Chicago high-rise

condominium unit located at 450 E. Waterside Drive, Unit 1301, Chicago, IL 60601 (the

"Waterside Drive Property"). *Wilmington Savings Fund Society, FSB v. Cosmano et al.*, Case

No. 1:20-cv-07032 (N.D. Ill.) ("*Wilmington*"), at ECF No. 64 (Memorandum Opinion and Order)

and ECF No. 65 (Judgment); *see also* **Ex. C**.

30.     Following the assessments of Mr. Cosmano's 2007 through 2010 tax liabilities,

Mr. Cosmano routinely traveled to Las Vegas, with at least 17 discrete trips made between

December 2012 and August 2017. **Ex. A**, at ¶ 6, and **Exhibit 2** thereto. Mr. Cosmano also

repeatedly took out cash advances, each of $2,000.00 or more, at "River's Casino" in Des

Plaines, Illinois, between May 2013 and May 2017. *Id.*

31.     On January 12, 2018, the United States District Court for the Northern District of

Illinois entered a judgment against Mr. Cosmano for unpaid income taxes, penalties, and interest

for his 2007 through 2010 tax years in the total amount of $6,051,979.50 as of January 9, 2018.

*United States v. Cosmano*, Case No. 1:17-cv-05721 (N.D. Ill.), at ECF No. 11.

32.     Mr. Cosmano acquired the Waterside Drive Property in 2007 for more than

$944,558. **Ex. D**, *Declaration of Ginger Menne*, at ¶ 13.[6] At the time of Mr. Cosmano's

acquisition of that property, it was listed as a 2,100 square foot, 3-bedroom, 3-bathroom unit. *Id.*

33.     On or about March 21, 2019, Mr. Cosmano obtained an appraisal of the Waterside

Drive Property by Michael Kuehn, a copy of which (previously filed by Mr. Cosmano in the

bankruptcy case at ECF No. 56-3) is attached as **Exhibit E** (the "Kuehn Appraisal"). The Kuehn

Appraisal stated that the Waterside Drive Property has one bedroom, "1.1" bathrooms, and a

---

[6] According to the Cook County Real Estate Transaction Tax stamps on the Warranty Deed
reflecting Mr. Cosmano's acquisition of the Waterside Drive Property ($7,155.00 at the 2007
rate of $7.50 per thousand) the purchase price may have been $954,000.00.

"Gross Living Area" of 1,135 square feet, and valued the property at $505,000.  **Ex. E**, at

pp. 2-3.  The Kuehn Appraisal did not include a floorplan for the Waterside Drive Property.

34.     According to Mr. Kuehn, the Kuehn Appraisal was premised on photographs of

the Waterside Drive Property provided to him by Mr. Cosmano, and also upon Mr. Cosmano's

representation to him that the Waterside Drive Property was a "1 bedroom, 1.1 bathroom, 1,130

square foot unit."  **Ex. F**, *Declaration of Michael Kuehn*, at ¶¶ 6-8.  Because Mr. Cosmano had

engaged Mr. Kuehn to perform a drive-by market appraisal, Mr. Kuehn never physically

inspected the Waterside Drive Property.  *Id.*

35.     Mr. Cosmano never disclosed to Mr. Kuehn that he purchased the Waterside

Drive Property as a 3-bedroom, 3-bathroom condominium unit in 2007.  **Ex. F**, at ¶ 9.  Nor did

Mr. Cosmano ever disclose to Mr. Kuehn that Mr. Cosmano had made any alterations to the

Waterside Drive Property's size, including by erecting or demolishing any walls in the unit.  *Id.*

36.     According to Mr. Kuehn, his valuation of the Waterside Drive Property in the

Kuehn Appraisal of $505,000 "would have been materially different[,]" and he "might have even

declined to perform the appraisal since [he] would have serious doubts about Mr. Cosmano's

intentions in obtaining the appraisal[,]" if he had known that the Waterside Drive Property was

substantially larger than 1,135 square feet.  **Ex. F**, at ¶ 10.  Mr. Kuehn believes that if he had

known that the Waterside Drive Property was 2,100 square feet, "it is very likely" that he would

have valued the property at greater than $505,000 as of the date of the Kuehn Appraisal.  *Id.*

37.     When Mr. Cosmano engaged Mr. Kuehn to create the Kuehn Appraisal, Mr.

Cosmano specifically told Mr. Kuehn that he wanted the appraisal "for tax purposes."  **Ex. F**, at

¶ 4.

38.     Less than seven weeks after procuring the Kuehn Appraisal, Mr. Cosmano filed a

petition to commence a Chapter 7 bankruptcy case in this Court. *In re Cosmano*, Case No. 19-

13287 (Bankr. N.D. Ill.), at ECF No. 1.  Mr. Cosmano listed the Waterside Drive Property on

"Schedule A/B: Property" to his bankruptcy petition, represented that the "[c]urrent value of the

entire property" was $505,000, and included the following notation: "Value per 3/19

appraisal[.]"  *Id.* at p. 10.

39.     On August 13, 2019, the Court entered an order of discharge in Mr. Cosmano's

Chapter 7 bankruptcy case. *In re Cosmano*, Case No. 19-13287 (Bankr. N.D. Ill.), ECF No. 26.

40.     On or about May 22, 2020, Mr. Cosmano obtained an appraisal of the Waterside

Drive Property by Kevin Vaught, a copy of which (previously filed by Mr. Cosmano in the

bankruptcy case at ECF No. 56-4) is attached as **Exhibit G** (the "Vaught Appraisal").  The

Vaught Appraisal – just as the Kuehn Appraisal – stated that the Waterside Drive Property had

one bedroom and spanned 1,135 square feet. **Ex. G**, at 3.  The Vaught Appraisal valued the

Waterside Drive Property at $497,500.  *Id.* at 1.  Like the Kuehn Appraisal, the Vaught Appraisal

did not include a floorplan for the Waterside Drive Unit.

41.     When Mr. Cosmano engaged Mr. Vaught to develop the Vaught Appraisal,

Mr. Cosmano supplied Mr. Vaught with a copy of the Kuehn Appraisal and "emphatically

urged" Mr. Vaught to adhere to the Kuehn Appraisal when developing his own. **Ex. H**,

*Declaration of Kevin Vaught*, at ¶ 9.  Mr. Cosmano specifically asked Mr. Vaught if his appraisal

of the Waterside Drive Property could be for $500,000 or less. *Id.*

42.     When Mr. Vaught listed for Mr. Cosmano the various items that would appear in

the Vaught Appraisal and explained that a floorplan of the Waterside Drive Property would be

included, Mr. Cosmano "promptly stopped" Mr. Vaught and instructed him not to include a

floorplan in the Vaught Appraisal. **Ex. H**, at ¶ 10. According to Mr. Vaught, Mr. Cosmano did

not explain why he wanted the Vaught Appraisal to omit a floorplan but was "insistent that [Mr.

Vaught] exclude it." *Id.*

43.    Mr. Cosmano never disclosed to Mr. Vaught that he purchased the Waterside

Drive Property as a 3-bedroom, 3-bathroom condominium unit in 2007. **Ex. H**, at ¶ 12. Nor did

Mr. Cosmano ever disclose to Mr. Vaught that he had made alterations to the Waterside Drive

Property's size, such as by blocking off the property's master suite with a false wall or by

demolishing an interior wall. *Id.*

44.    The Vaught Appraisal was predicated on the appearance of the Waterside Drive

Property as "small" one-bedroom unit of roughly 1,135 square feet during Mr. Vaught's May 22,

2020 walkthrough of the unit. **Ex. H**, at ¶¶ 8, 11. According to Mr. Vaught, the value of the

Waterside Drive Property reflected in the Vaught Appraisal would have been "materially

different" if Mr. Vaught had been aware at the time of his making of the appraisal that the

Waterside Drive Property had more than one bedroom and was substantially larger than 1,135

square feet. *Id.* at ¶ 13. Specifically, Mr. Vaught believes he would have valued the Waterside

Drive Property at greater than $497,500 as of the date of the appraisal. *Id.*

45.    Throughout the pendency of his Chapter 7 bankruptcy case, both before and after

the entry of the discharge, Mr. Cosmano referenced or explicitly proffered the Kuehn Appraisal

and the Vaught Appraisal in filings in this Court seeking to avoid the judicial lien encumbering

the Waterside Drive Property stemming from the District Court's January 12, 2018 judgment

described in paragraph 31, above. *In re Cosmano*, Case No. 19-13287 (Bankr. N.D. Ill.), ECF

No. 11, at pp. 3-6, (June 12, 2019 *Notice of Motion to Avoid Lien*), ECF No. 19, at pp. 5-7

(July 17, 2019 *Memorandum in Support of Motion to Avoid Lien*), ECF No. 56, at pp. 4-9

(March 1, 2021 *Notice of Motion to Avoid Judicial Lien on 450 E. Waterside Drive, Unit 1301, Chicago, Illinois*), ECF No. 83, at pp. 4-8 (April 12, 2021 *Reply to the United States' Response to Motions to Avoid Lien (Docket 55 & 56)*).

46.    Mr. Cosmano likewise relied upon the Kuehn Appraisal and the Vaught Appraisal in a prior District Court action brought by the United States to enforce its federal tax liens encumbering the Waterside Drive Property, *United States v. Cosmano, et al.*, Case No. 1:19-cv-06276 (N.D. Ill.).  Specifically, in his opposition to the United States' motion for summary judgment, Mr. Cosmano urged the District Court to reject the United States' request to order a judicial sale of the Waterside Drive Property under 26 U.S.C. § 7403, asserting that the then-outstanding balance of a senior mortgage interest encumbering the Waterside Drive property (said to be about $585,000) was greater than the value of the Waterside Drive Property under the Vaught Appraisal ($497,500), and that because the mortgage would exhaust the value of the property leaving no equity allocable to the United States' liens, "a decree of foreclosure would be neither appropriate nor effective."  *Id.* at ECF No. 34, pp. 3-4 (November 23, 2020 *Defendant James Cosmano's Response to the Plaintiff's Motion for Summary Judgment and Memorandum in Support Thereof*).  Mr. Cosmano's opposition brief attached both the Kuehn Appraisal and the Vaught Appraisal.  *Id.* at ECF No. 34-5.[7]

47.    Similarly, Mr. Cosmano asserted the valuations of the Waterside Drive Property under the Kuehn Appraisal and the Vaught Appraisal in a mortgage foreclosure

---

[7] The United States ultimately dismissed the lien-foreclosure action to avoid duplicative litigation in view of the subsequent *Wilmington* suit brought by Mr. Cosmano's mortgage-holder, which action the United States removed to the District Court from the Circuit Court of Cook County.  *See United States v. Cosmano, et al.*, Case No. 1:19-cv-06276 (N.D. Ill.), ECF No. 36 (December 10, 2020 *Stipulation to Dismiss*); *Wilmington*, ECF No. 1 (November 27, 2020 *United States' Notice of Removal*).

action concerning the Waterside Drive Property originally commenced by Mr. Cosmano's
mortgage-holder, Wilmington Savings Fund Society, FSB, in which the United States
counterclaimed to enforce its tax liens against the Waterside Drive Property. *Wilmington*,
ECF No. 43, at pp. 8-9 (August 31, 2021 *Response of James Cosmano to Wilmington Savings
Fund Society, FSB, Nor* [sic] *in its Individual Capacity by* [sic] *Solely as Owner Trustee of
CSMC 2018-SP3 Trust's LR 56.1 Statement of Material Facts*); ECF No. 54, at p. 14
(September 28, 2021 *Combined Response of James Cosmano to Wilmington Savings Fund
Society, FSB, Nor* [sic] *in its Individual Capacity by* [sic] *Solely as Owner Trustee of CSMC
2018-SP3 Trust and the United States of America* [sic] *LR 56.1 Statement of Material Facts*).
Much like his approach in the prior tax lien enforcement suit described above at paragraph 46,
Mr. Cosmano proffered the Kuehn Appraisal and the Vaught Appraisal in his *Wilmington*
filings in support of his assertion that the United States' tax lien "has no value and should be
valued at $0.00." *Wilmington*, at ECF No. 44, p. 3 (August 31, 2021 *Combined Response and
Memorandum of James Cosmano in Opposition to Motion and Memorandum of Plaintiff for
Summary Judgment*); ECF No. 55, p. 3 (September 28, 2021 *Response and Memorandum of
James Cosmano in Opposition to Defendant and Counterclaim-Plaintiff United States of
America's Memorandum of Law in Support of Motion for Summary Judgment*).

48.    As part of its bid to have the Waterside Drive Property sold through a judicial
sale in *Wilmington*, the United States contacted Ginger Menne, an Illinois-licensed local real
estate agent familiar with the condominium building in which the property was situated, and
requested that she provide a broker's price opinion ("BPO") for the Waterside Drive Property.
**Ex. D**, at ¶¶ 1-4.

49.     Ms. Menne agreed to provide a BPO and made arrangements with Mr.

Cosmano and his counsel, Paul Bach, to physically visit the Waterside Drive Property on

November 13, 2021, for that purpose.  **Ex. D**, at ¶¶ 5-7.  In the days leading up to Ms.

Menne's scheduled walkthrough of the Waterside Drive Property, Ms. Menne spoke with Mr.

Cosmano over the phone.  *Id.* at ¶ 7.  According to Ms. Menne, during that phone

conversation Mr. Cosmano was "hesitant to let [Ms. Menne] walk through the condo" and

"repeatedly told [her] that the condo he purchased from the developer was always a one-

bedroom unit."  *Id.* at ¶ 8.

50.     When Ms. Menne arrived at the Waterside Drive Property on November 13,

2021, to inspect the property, she "expect[ed] to see a three-bedroom, three-bathroom condo

of approximately 2,100 square feet" based on Ms. Menne's familiarity with the standardized

floorplans of the condominium building.  **Ex. D**, at ¶ 9.  However, when Ms. Menne entered

the Waterside Drive Property, she "immediately knew that something was wrong" because the

layout of the property was inconsistent with the floorplan for condominium units – like Mr.

Cosmano's – with numbers ending in "01" on floors 13 through 19 of the building.  *Id.* at

¶ 11.  According to Ms. Menne, Mr. Cosmano "had erected a wall across the doorway

providing access to the unit's master suite, effectively cutting the unit in half" (the "False

Wall"), and ostensibly "modified the remainder of the unit that is still accessible, by removing

one of the walls between the bedroom and the living area, effectively making the unit into a

one-bedroom unit[.]"  *Id.*

51.     During Ms. Menne's November 13, 2021 walkthrough of the Waterside Drive

Property, it further appeared to her "that someone had arranged for the doorway and some of

the adjoining walls on either side to be covered over with non-load-bearing drywall to hide

the true size of the unit[,]" and that "the work done to put the unit in this configuration was done some time ago and is not recent." **Ex. D**, at ¶ 11.

52.     Following Ms. Menne's discovery of the False Wall and Mr. Cosmano's other alterations to the Waterside Drive Property, the United States notified the District Court, and subsequently this Court, of her findings. *Wilmington*, at ECF No. 58 (November 19, 2021 *Defendant and Counterclaim Plaintiffs' Request to Stay Decision on Pending Motions*), ECF No. 62 (January 7, 2022 *Defendant and Counterclaim-Plaintiff United States of America's Status Report*); *see also* Adv. Pro. ECF No. 24 (January 31, 2022 *Notice of Motion to Stay Proceeding*).

53.     On January 18, 2022, the District Court granted the cross-motions for summary judgment of Mr. Cosmano's mortgage-holder and the United States to enforce their liens against the Waterside Drive Property, and further determined that a receiver should be appointed under 26 U.S.C. § 7403(d) to conduct a judicial sale of the property. *Wilmington*, at ECF No. 64 (*Memorandum Opinion and Order*).   The District Court subsequently entered an order appointing Ms. Menne as receiver on February 17, 2022. *Wilmington*, at ECF 66 (*Order Appointing Receiver*) (the "Receiver Order").

54.     The Receiver Order provided, *inter alia*, that "[a]ll parties shall cooperate fully with the receiver and shall also take all necessary actions to enable the receiver to convey marketable title to the subject property[,]" and that "[a]ll persons occupying the subject property shall, no later than thirty days after the entry of this order, vacate and depart from the subject property, leaving in place all fixtures, appliances, and improvements without disturbance to the premises[.]"  Receiver Order, at ¶¶ 2, 4.

55.     The Receiver Order also addressed the False Wall, providing that "[t]he receiver shall, upon taking custody of the subject property, make arrangements in consultation with the parties . . . to remove the false wall described in the status report of the United States (ECF No. 62) which is presently obstructing access to the master bedroom suite of the subject property" and that "[n]o party shall take any action to remove the false wall (or any property located in the areas behind that wall) unless the receiver and representatives of the United States are present for the removal of the wall."  Receiver Order, at ¶ 5.

56.     Additionally, the Receiver Order specified that "Defendant James A. Cosmano shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so[,]" and that a "[v]iolation of this paragraph shall be deemed a contempt of court and punishable as such."  Receiver Order, at ¶ 8.

57.     On March 5, 2022, Ms. Menne contacted Jeffrey N. Nuñez (counsel of record for the United States in this adversary proceeding and in *Wilmington*) and notified him that on March 4, 2022 – that is, after the District Court's entry of the Receiver Order – accessed the Waterside Drive Property and damaged it, including by removing cabinets, countertops, appliances, fixtures, and other property.  **Ex. I**, *Declaration of Jeffrey Nuñez*, at ¶¶ 1, 4.  Ms. Menne further notified Attorney Nuñez that Mr. Cosmano had broken down the False Wall. *Id.* at ¶ 4.  In view of the foregoing, Ms. Menne had arranged for the locks to the Waterside Drive Property be replaced.  *Id.*

58.     Ms. Menne thereafter contacted Attorney Nuñez a second time on March 5, 2022, to notify him that Mr. Cosmano had returned to the Waterside Drive Property, broke

down the front door (the locks had since been changed), and continued to remove fixtures from the property. **Ex. I,** at ¶ 5.

59.     The United States promptly filed an emergency motion in *Wilmington* requesting that the District Court enforce the Receiver Order. *Wilmington*, at ECF No. 67 (March 6, 2022 *Defendant and Counterclaim Plaintiff United States' Emergency Motion for an Order Enforcing the Order Appointing Receiver [ECF No. 66]*) (alteration in original). The District Court granted the United States' emergency motion the same day. *Wilmington*, at ECF No. 69-1 (March 6, 2022 *Order Enforcing Order Appointing Receiver*) (the "Enforcement Order").

60.     The Enforcement Order directed, *inter alia*, that Mr. Cosmano was to immediately vacate the Waterside Drive Property, and mandated that he "shall immediately return to the United States Marshals Service all fixtures or appliances removed from the Subject Property[.]" Enforcement Order, at ¶¶ 1, 4.

61.     Mr. Cosmano did not immediately return the fixtures or appliances he had removed from the Waterside Drive Property. **Ex. J,** *Declaration of Receiver Ginger Menne*, at ¶ 8.

62.     Following the events giving rise to the entry of the Enforcement Order, the United States filed a motion in *Wilmington* for an order directing Mr. Cosmano to show cause as to why he should not be held in civil contempt of the District Court's Receiver Order and the Emergency Order. *Wilmington*, at ECF No. 71 (April 22, 2022 *Defendant and Counterclaim Plaintiff United States Of America's Motion For Order To Show Cause Why Defendant and Counterclaim Defendant James Cosmano Should Not Be Held In Civil Contempt*). The District Court granted the United States' motion and ordered Mr. Cosmano to

physically appear before the District Court for a show-cause hearing on May 5, 2022 (the "Contempt Hearing"). *Wilmington*, at ECF No. 72 (April 26, 2022 *Minute Entry*).

63.     The Contempt Hearing was held as scheduled. *See* **Ex. K**, *Transcript of May 5, 2022 Contempt Hearing*. At the outset of that proceeding, counsel for the United States notified the District Court that the United States Department of Justice's Tax Division had made a referral to the office of the United States Attorney for the Northern District of Illinois to consider whether a crime was committed by Mr. Cosmano warranting prosecution. **Ex. K**, at 8:3-11. Mr. Cosmano, through counsel, asserted his Fifth Amendment right against self-incrimination during the Contempt Hearing, and the District Court accepted that assertion. *Id.* at 10:9-16; 31:15-18.

64.     Following oral argument and the presentation of witness testimony, the District Court held Mr. Cosmano in civil contempt of its Receiver Order and its Emergency Order. The District Court prefaced its ruling by observing that those orders were "clear and unambiguous." **Ex. K**, at 43:7-8. It also recounted that the Receiver Order instructed the parties to "cooperate fully with the receiver[,]" to "leave in place all fixtures, appliances, and improvements, without disturbance to the premises[,]" and to take no "action to remove the false wall or any property located behind that wall" unless Ms. Menne and representatives of the United States were present for the removal of the False Wall. *Id.* at 43:8-15. The District Court further highlighted that the Receiver Order had specifically directed that "Mr. Cosmano shall not do anything that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so[,]" and that its companion Emergency Order mandated that Mr. Cosmano was to "immediately return" any fixtures or appliances he had removed

from the Waterside Drive Property. *Id.* at 43:15-21. Mr. Cosmano, the District Court found,

"violated these orders." *Id.* at 43:22.

65.    Regarding Mr. Cosmano's violations of the Receiver Order and the Emergency

Order, the District Court observed that "[t]hese were significant violations and a substantial

lack of compliance on Mr. Cosmano's part." **Ex. K**, at 44:18-19. It further explained:

> These provisions of these orders were important. They go to the marketability
> and the value of this property, which I have ordered foreclosed on. And the value
> of this property belongs, in large part, to the mortgagor [sic] and the lienholders
> first.

*Id.* at 44:23-25, 45:1-2. Mr. Cosmano's violations, the District Court emphasized, "attack the

purpose of the order, which makes the violations not only clear violations of specific terms,

but also significant in terms of consequence and purpose." *Id.* at 45:3-6.

66.    The District Court's ruling during the Contempt Hearing ultimately concluded:

> I don't know what [Mr. Cosmano's] motive was for this, and I make no
> conclusion or finding about whether it was to evade or defeat a tax, but I do find
> that it was a willful violation of my orders. They were clear orders,
> unambiguous. Mr. Cosmano is a lawyer, and he well knew that court orders are
> to be followed. Whatever motivated his decision, it was a willful one relative to
> my orders.

**Ex. K**, at 45:14-21. Regarding the Court's comment about whether one motive was to evade

or defeat tax, at the outset of the Contempt Hearing, the District Court had denied the United

States' request to reassign and consolidate the United States' then-pending motion for

withdrawal of the bankruptcy reference for this adversary proceeding, *see* Adv. Pro. ECF No. 37,

with the Contempt Hearing.[8]

---

[8] The District Court's (Shah, J.) determination to avoid ruling on whether Mr. Cosmano's willful
violations of its Receiver Order and Emergency Order fell within the scope of 11 U.S.C.
§ 523(a)(1)(C), was appropriate as the issue of § 523(a)(1)(C) was thus not before the District
Court when it made its ruling on Mr. Cosmano's conduct; instead, that issue remained part of

(continued...)

67.     On May 10, 2022, the District Court entered an order memorializing its findings during the Contempt Hearing, ordering Mr. Cosmano to return all previously-unreturned fixtures and appliances to Ms. Menne within two business days, and entering judgment against Mr. Cosmano and in favor of the United States for damages in the amount of $150,000.00.  *Wilmington*, at ECF No. 79 (*Civil Contempt Order*).  The United States understands that any amount collected as such damages must also be credited to Mr. Cosmano's tax liabilities – *i.e.,* in no event is the United States entitled to an *additional* $150,000.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Noah D. Glover-Ettrich*
NOAH D. GLOVER-ETTRICH
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-9838 (v)
202-514-5238 (f)
Noah.D.Glover-Ettrich@usdoj.gov

---

this adversary proceeding and whether to withdraw the reference remained before Judge Valderrama in *Cosmano v. United States*, Case No. 1:22:-cv-02118 (N.D. Ill.).

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2022, I electronically filed the foregoing document, along with its attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

*/s/ Noah D. Glover-Ettrich*
NOAH D. GLOVER-ETTRICH
Trial Attorney, Tax Division
United States Department of Justice